**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Phone:        (312) 222-9350
Facsimile:    (312) 527-0484

**JENNER & BLOCK LLP**
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071
Phone:        (213) 239-5100
Facsimile:    (213) 239-5199

Attorneys for Defendant
Mondelēz Global LLC
(incorrectly sued as Mondelēz International, Inc.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI KLAMMER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONDELĒZ INTERNATIONAL, INC.,<br><br>Defendant. | Case No. 4:22-cv-2046-JSW<br><br>The Honorable Jeffrey S. White<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Hearing Date:    August 19, 2022<br><br>Hearing Time:    9:00 a.m.<br><br>Courtroom:        Remote (Zoom) |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on August 19, 2022 at 9:00 a.m., or as soon thereafter as the Court is available, Defendant Mondelēz Global LLC ("MDLZ," incorrectly sued as Mondelēz International, Inc.) will appear before the Honorable Jeffrey S. White via the Zoom videoconference platform and will, and hereby does, move to dismiss Plaintiff Avi Klammer's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and each claim asserted therein, because it fails to state a plausible claim on which relief can be granted.

MDLZ's motion to dismiss is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, any additional briefing on this subject (including MDLZ's reply brief), and the evidence and arguments that will be presented to the Court at the hearing on this matter.

DATED:  June 21, 2022

JENNER & BLOCK LLP

By:     /s/   Dean N. Panos
                Dean N. Panos

Attorneys for Defendant
Mondelēz Global LLC

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

ALLEGATIONS OF THE COMPLAINT.............................................................................2

ARGUMENT ......................................................................................................................4

I.      Plaintiff Has Not Plausibly Alleged That MDLZ's Labeling Is Misleading. ...................4

      A.      Viewed in context, the phrase "High Protein Lentils" is not misleading or unlawful.........5

      B.      Plaintiff's challenge to the back-label "Protein-Packed" representation also fails.............7

      C.      The omission of the "corrected amount of protein" is also not actionable. .......................10

II.     Plaintiff's Tag-Along Claims Fail Absent a Plausible Allegation of Consumer Deception..........11

III.    Plaintiff Cannot Assert Statutory Claims on Behalf of a Nationwide Class................................13

IV.     Plaintiff Cannot Seek Equitable Relief Because He Has an Adequate Legal Remedy. ................14

CONCLUSION.....................................................................................................................15

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 4:22-CV-2046-JSW

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Cole Haan, LLC*,
No. 20-913, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ...................................................15

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ..............................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................4, 7

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ..............................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................4

*Brady v. Bayer Corp.*,
26 Cal. App. 5th 1156 (2018) ...............................................................................................9

*Brazil v. Dole Packaged Foods, LLC*,
660 F. App'x 531 (9th Cir. 2016) ........................................................................................7

*Brown v. Nature's Path Foods, Inc.*,
No. 21-5132, 2022 WL 717816 (N.D. Cal. Mar. 10, 2022) .........................................10, 11

*Brown v. Starbucks Corp.*,
No. 18-2286, 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) .....................................................9

*Brown v. Van's International Foods, Inc.*,
No. 22-1, 2022 WL 1471454 (N.D. Cal. May 10, 2022).....................................................11

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1998) ................................................................................................8

*Coe v. Gen. Mills, Inc.*,
No. 15-5112, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ...............................................8

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990) ................................................................................................8

*Demetriades v. Yelp!, Inc.*,
228 Cal. App. 4th 294 (2014) ...............................................................................................8

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) .................................................................................8

iii

*Figy v. Frito-Lay N. Am., Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014) ................................................. 13

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ................................................................... 5

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. 20-769, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ................... 15

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
   316 F. App'x 561 (9th Cir. 2008) ........................................................ 12

*Grupo Bimbo, S.A. B. De C.V. v. Snak-King Corp.*,
   No. 13-2147, 2014 WL 12610141 (C.D. Cal. Oct. 2, 2014) ................ 13

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) .............................................................. 4

*Knowles v. ARRIS Int'l PLC*,
   847 F. App'x 512 (9th Cir. 2021) .......................................................... 5

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) .......................................................................... 7

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ................................................................ 4

*In re MacBook Keyboard Litig.*,
   No. 18-2813, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ............... 15

*Mitchell v. Whole Foods Mkt. Grp., Inc.*,
   No. 20-8496, 2022 WL 657044 (S.D.N.Y. Mar. 4, 2022) ..................... 6

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ............................................................. 4, 5

*N. Alaska Salmon Co. v. Pillsbury*,
   174 Cal. 1 (1916) ................................................................................ 13

*Newcal Indus., Inc. v. Ikon Office Solutions*,
   513 F.3d 1038 (9th Cir. 2008) .............................................................. 8

*Pardini v. Unilever U.S., Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ............................................. 10

*Punian v. Gillette Co.*,
   No. 14-5028, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) .............. 12

*Shaeffer v. Califia Farms, LLC*,
   44 Cal. App. 5th 1125 (2020) ................................................. 7, 10, 11

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...................................................................2, 14, 15

*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021).............................................................9

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) .................................................................................13

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ...........................................................13

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-2976, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ...........................6

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ........................................................................14

*Warner v. Tinder Inc.*,
   105 F. Supp. 3d 1083 (C.D. Cal. 2015) .........................................................13

*Weiss v. Trader Joe's Co.*,
   838 F. App'x 302 (9th Cir. 2021) ...............................................................5, 12

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ...........................................................................9

*Wilson v. Frito-Lay North America, Inc.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) .........................................................13

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...........................................................9

*Wynn v. Topco Assocs., LLC*,
   No. 19-11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) .............................6

*Yu v. Dr. Pepper Snapple Grp., Inc.*,
   No. 18-6664, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ............................12

**Statutes**

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ....................................*passim*

False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* .....................................*passim*

Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ......................................*passim*

**Other Authorities**

21 C.F.R. § 101.9(c)(7) ..............................................................................................2, 3, 6

21 C.F.R. § 101.54 .................................................................................................................*passim*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 4:22-CV-2046-JSW

## INTRODUCTION

Enjoy Life Foods, a subsidiary of Mondelēz Global LLC[1] ("MDLZ"), manufactures Enjoy Life Lentil Chips. In contrast to potato chips or tortilla chips, Enjoy Life Lentil Chips are made with lentil flour—or, to quote the packaging, "high protein lentils finely milled into flour for a light & airy chip with serious crunch." Compl. ¶ 17. Plaintiff does not dispute that the chips contain lentil flour. Nor does he identify any affirmative front-label representation that the chips contain a specific amount of protein. Instead, Plaintiff claims that the phrase "high protein lentils"—which describes only the lentil flour used to make the chips, rather than the chips themselves—falsely suggests that Enjoy Life Lentil Chips are "high" in protein even though they do not satisfy the FDA's requirements to make such a claim. Plaintiff's interpretation of the labeling is entirely implausible, and this Court should dismiss his lawsuit.

The fundamental flaw in Plaintiff's lawsuit is that it fixates on the phrase "high protein" while ignoring the context in which this phrase appears. The phrase "high protein" never appears in isolation on the labeling of Enjoy Life Lentil Chips. Instead, it appears only as part of the phrase "high protein lentils," which makes clear that this phrase refers only to the lentil flour used to manufacture the product. No reasonable consumer would interpret the phrase "high protein lentils finely milled into flour" as a representation about the chips themselves—let alone a representation that the chips are "high" in protein or that they provide a specific amount of protein. Instead, a reasonable consumer would interpret this phrase to mean that the chips are made with lentil flour, which is higher in protein than other flours commonly used to make chips. Courts routinely reject consumer fraud claims where the plaintiff plucks words out of a label while ignoring the context in which they appear. This Court should do the same here.

The FDA's general regulation governing "high" claims, 21 C.F.R. § 101.54, does not change this result. Despite Plaintiff's suggestion to the contrary, this regulation does not transform any statement that includes the word "high" into a regulated nutrient content claim, regardless of the context in which that word appears. Moreover, Plaintiff's complaint is bereft of any factual allegations suggesting that this regulation has any bearing on reasonable consumer expectations. Even if Plaintiff's allegations established

---

[1] Plaintiff incorrectly names Mondelēz International, Inc., a global holding company, as the defendant in this action, even though Mondelēz Global LLC is the operating company that sells and distributes food products sold under MDLZ's various brands in the United States.

a technical violation of this regulation (which they do not), that does not mean that the labeling of Enjoy Life Lentil Chips is likely to mislead a reasonable consumer—as Plaintiff must establish to state a claim.

Plaintiff's challenges to the back label of Enjoy Life Lentil Chips fare no better. For example, Plaintiff quibbles with the phrase "Protein-Packed" on the back label. But Plaintiff does not allege that he saw or relied on this phrase when purchasing Enjoy Life Lentil Chips, and this phrase is not an affirmative misrepresentation in any event. To the contrary, it is non-actionable puffery on which no reasonable consumer would rely. Similarly, Plaintiff alleges that MDLZ violates another FDA regulation, 21 C.F.R. § 101.9(c)(7)(i), by failing to state the percent of daily value of protein in the Nutrition Facts panel. But like his challenge to the "Protein-Packed" claim, this theory fails because Plaintiff has not plausibly alleged that this omission had any effect on his decision to purchase Enjoy Life Lentil Chips or the amount he was willing to pay for them. Multiple judges in this District have dismissed similar claims premised on the omission of the percent of daily value of protein, and this Court should reach the same conclusion here.

Finally, even if this Court permits Plaintiff's lawsuit to proceed, it should dismiss his claims on behalf of a nationwide class and his claims for equitable relief. California courts have made clear that California's consumer protection statutes do not apply extraterritorially, and this Court should not permit Plaintiff to sue an out-of-state defendant on behalf of out-of-state consumers whose purchases lack any nexus to California. Moreover, because Plaintiff's claims for violations of the Consumers Legal Remedies Act ("CLRA") and for breach of express warranty allow him to recover money damages, he cannot establish that his legal remedies are inadequate—even though he must do so to seek equitable relief under California's consumer protection statutes. *See generally Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). These claims are fatally flawed, and this Court should dismiss them with prejudice.

## ALLEGATIONS OF THE COMPLAINT

This case concerns Enjoy Life Lentil Chips, which are made with lentil flour. The front of the packaging describes them as "light and airy lentil chips" seasoned with sea salt, and it states that the chips are made with "high protein lentils, finely milled into flour for a light and airy chip with serious crunch." Compl. ¶ 17 (image of packaging). The back of the packaging similarly states that "[t]his chip's unique recipe results in a protein-packed, crunchy experience, bursting with flavor as you savor a great-tasting 'better-for-you' chip." *Id.* Leaving aside the Nutrition Facts panel, which accurately states that the chips

contain 3 grams of protein per serving, the labeling does not make any objective representation as to the amount of protein the chips contain.   Plaintiff nonetheless alleges that the product's packaging is misleading in three distinct ways:

<u>First</u>, Plaintiff asserts that the phrase "high protein lentils"—which describes the lentil flour used to make the chips—is misleading because it falsely suggests that the chips are "high" in protein.   Relying on an FDA regulation, 21 C.F.R. § 101.54(b), Plaintiff claims that the FDA permits manufacturers like MDLZ to state that a product is "high" in protein only if it contains at least 20% of the recommended daily intake ("RDI") or daily reference value ("DRV") of protein.   *See* Compl. ¶ 28.   According to Plaintiff, the DRV of protein "is based on a complete protein," and "the gross amount of protein must be adjusted by the protein digestibility-corrected amino acid score ('PDCAAS')."   *Id.* ¶¶ 29–30.   Plaintiff then alleges that Enjoy Life Lentil Chips contain only 3 grams of protein per serving and that the "PDCAAS for lentils range[s] from 0.538 to 0.628."   *Id.* ¶ 31.   Plaintiff thus alleges that the "PDCAAS-corrected protein amount for the Products is 1.88 grams per serving," such that "the Products only contain 18.8% of the protein content required to substantiate high protein claims."   *Id.* ¶¶ 32–33.

<u>Second</u>, Plaintiff claims that the product's alleged lack of protein also makes it misleading to use the phrase "Protein-Packed" on the back of the package, as this phrase implies to consumers that the product is "high" in protein or an "excellent source" of protein—even though the product does not qualify for those claims under 21 C.F.R. § 101.54.   *See* Compl. ¶¶ 26–27.   Notably, Plaintiff does not specifically allege that he saw or relied on the "Protein-Packed" language before purchasing Enjoy Life Lentil Chips. Rather, he alleges only that he "relied upon Defendant's labeling and advertising claims, namely, the high protein representations *printed on the front of the Product*."   *Id.* ¶ 8 (emphasis added).

<u>Third</u>, Plaintiff claims that MDLZ violates the FDA's protein-labeling regulation, 21 C.F.R. § 101.9(c)(7), by making "nutrient content claim[s] related to protein content" while failing to state the "Percent Daily Value" of protein in the Nutrition Facts panel.   Compl. ¶¶ 34–35.   "By artfully omitting the DRV for protein," Plaintiff alleges, MDLZ "is able to mislead and deceive consumers that the Products are excellent sources of protein."   *Id.* ¶ 36.   Once again, however, Plaintiff does not allege that he reviewed the Nutrition Facts panel prior to purchasing Enjoy Life Lentil Chips—let alone that the omission of the percent of daily value of protein played any role in his decision to purchase the product.

Based on these allegations, Plaintiff asserts claims against MDLZ for violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, as well as common-law claims for breach of express warranty and unjust enrichment. *See* Compl. ¶¶ 65–115. Plaintiff asserts these claims on behalf of a putative nationwide class of consumers, as well as a putative California subclass. *See id.* ¶ 56.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facts indicating the "mere *possibility* of misconduct" fall short of meeting this plausibility standard. *Id.* at 679 (emphasis added). Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "across the line from conceivable to plausible." *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570). Plaintiff's allegations do not come close to doing so.

### I.   Plaintiff Has Not Plausibly Alleged That MDLZ's Labeling Is Misleading.

Because Plaintiff's claims are premised on allegedly "deceptive or misleading marketing," he must "demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021). To satisfy that "reasonable consumer" standard, Plaintiff must "show that members of the public are *likely* to be deceived" by MDLZ's labeling. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted and emphasis added).

This standard "requires more than a mere possibility that [the] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Nor is the standard that of a "least sophisticated consumer" or an "unwary consumer." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation and emphasis omitted). "Rather, the reasonable consumer standard requires a *probability* that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Becerra*, 945 F.3d at 1228–29 (emphasis added) (citation and internal quotation marks omitted). None of Plaintiff's theories of deception satisfy this standard.

**A.      Viewed in context, the phrase "High Protein Lentils" is not misleading or unlawful.**

Plaintiff's primary theory of deception is that the packaging of Enjoy Life Lentil Chips falsely represents that they are a "high protein" food.  *See, e.g.*, Compl. ¶ 4 (alleging that "all *Products* are labeled as 'high protein'") (emphasis added); *id.* ¶ 18 ("On the front label . . . Defendant prominently represents that the *product* is 'high protein.'") (emphasis added).  Plaintiff claims that this representation is both misleading and unlawful because the product does not contain enough protein to qualify for a "high protein" claim under 21 C.F.R. § 101.54.  *See* Compl. ¶¶ 24–33.  But this theory ignores the fact that the phrase "high protein" describes the lentil flour from which the chips are made—not the product itself.

As the Ninth Circuit has made clear, this Court must evaluate whether MDLZ's labeling is misleading by considering the packaging "as a whole," instead of evaluating a single phrase (such as "high protein") in isolation.  *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995); *see also Moore*, 4 F.4th at 882 (affirming dismissal of false advertising lawsuit and holding that claim was not plausible "as a matter of law" where "other available information . . . would quickly dissuade a reasonable consumer" from his mistaken interpretation of the labeling); *Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512, 513 (9th Cir. 2021) (similar).  Indeed, as the Ninth Circuit recently explained, *Freeman* stands for the common-sense proposition that "product packaging should be examined in its full context because it would be unreasonable to cherry-pick discrete statements to prove deception."  *Weiss v. Trader Joe's Co.*, 838 F. App'x 302, 303 (9th Cir. 2021).  That commonsense principle is fatal to Plaintiff's claim.

Critically, the labeling of Enjoy Life Lentil Chips *never* uses the phrase "high protein" in isolation.  *See* Compl. ¶ 18 (images of the labeling).  Nor does the labeling use the phrase "high protein" to describe the chips themselves.  Instead, the labeling includes the following text: "high protein lentils, finely milled into flour for a light and airy chip with serious crunch."  *Id.*  Viewed in that context, no reasonable consumer would construe the phrase "high protein lentils" as a representation about the protein content of the chips— let alone as a claim that the chips satisfy the FDA's technical requirements for making a "high" nutrient content claim.  Rather, a reasonable consumer would understand that the phrase "high protein lentils" refers to the lentil flour, which is higher in protein than other flours and provides Enjoy Life Lentil Chips with their "light and airy" consistency and "serious crunch."

To avoid this commonsense result, Plaintiff claims that the FDA regulations require any product that uses the phrase "high protein"—no matter the context—to contain at least 10 grams of protein.  But Plaintiff has not alleged "that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations." *Wynn v. Topco Assocs., LLC*, No. 19-11104, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021); *see also, e.g.*, *Victor v. R.C. Bigelow, Inc.*, No. 13-2976, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) ("[T]he ultimate question . . . is what a reasonable consumer expects, which may have absolutely no relation to FDA regulations.")

It is accordingly irrelevant whether the FDA has promulgated a regulation dictating the specific amount of protein necessary to use the word "high."  What matters is whether a reasonable consumer would interpret the labeling claim at issue here (*i.e.*, "high protein lentils, finely milled into flour for a light and airy chip with serious crunch") to mean that Enjoy Life Lentil Chips contain 20% of the DRV of protein.  Absent any allegation that reasonable consumers share the FDA's definition of "high protein," or that reasonable consumers interpret the phrase "high protein lentils" as a claim about *the product's* protein content, Plaintiff has not plausibly alleged that this phrase is misleading.  *See Mitchell v. Whole Foods Mkt. Grp., Inc.*, No. 20-8496, 2022 WL 657044, at *3 (S.D.N.Y. Mar. 4, 2022) ("Where there is no extrinsic evidence that the perceptions of ordinary consumers align with these various labeling standards, the federal regulations cited by the plaintiff are insufficient to establish that a consumer is likely to be misled by the alleged lack of conformity with the regulations.") (citations and internal quotation marks omitted).

Plaintiff's theory of misbranding is not only divorced from reasonable consumer expectations, but also leads to absurd results.  As Plaintiff notes in his complaint, the FDA has set a daily reference value of 50 grams of protein for adults and children over four.  *See* Compl. ¶ 28 (citing 21 C.F.R. § 101.9(c)(7)(iii)).  And the FDA's regulation governing "high" claims, 21 C.F.R. § 101.54(b), requires a product to contain 20% of the DRV of the advertised nutrient to use the terms "high," "rich in," or "excellent source."  21 C.F.R. § 101.54(b).  Thus, according to Plaintiff, the phrase "high protein" *necessarily* implies that the product contains 10 grams of protein.  But no reasonable consumer would believe that a serving of chips— let alone a 28-gram serving of "light and airy" lentil chips—would contain that amount of protein.

As a point of comparison, a 45-gram serving of peanut butter contains approximately 10 grams of protein.[2]  Similarly, a 1-cup serving of reduced-fat milk contains approximately eight grams of protein.[3]  And a whole egg contains approximately 6 grams of protein.[4]  A reasonable consumer exercising basic common sense—which the Supreme Court has directed district courts to apply in weeding out implausible claims (*see Iqbal*, 556 U.S. at 679)—would not believe that a 28-gram serving of lentil chips would contain as much protein as a serving of peanut butter, or more protein than an egg or a cup of milk.

It is accordingly implausible that a reasonable consumer would construe the labeling as a representation that Enjoy Life Lentil Chips are a "high protein" product—at least not as that term is defined by 21 C.F.R. § 101.54(b).  Instead, a reasonable consumer, viewing the "high protein lentils" claim in context, would understand it as a representation that Enjoy Life Lentil Chips are made of lentil flour, a fact Plaintiff does not and cannot dispute.  This Court should reject this implausible theory of deception.

## B.     Plaintiff's challenge to the back-label "Protein-Packed" representation also fails.

In addition to challenging the phrase "High Protein Lentils," Plaintiff alleges that the phrase "Protein-Packed"—which appears only on the *back* of Enjoy Life Lentil Chips—is misleading because the chips provide only 1.88 grams of digestible protein per serving.  *See* Compl. ¶¶ 26-27.  But this theory suffers from at least three fundamental flaws that render it implausible.

First, Plaintiff has not plausibly alleged that the "Protein-Packed" representation played any role in his decision to purchase Enjoy Life Lentil Chips.  California law makes clear that "a plaintiff has standing to sue under the unfair competition law, the false advertising law and the CLRA only if she 'actually relied' on whatever defect in a product label allegedly makes it actionable when making her decision to buy the product."  *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1143 (2020) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011)).  In other words, if Plaintiff "did not see the allegedly offending statement before he purchased" Enjoy Life Lentil Chips, that statement "cannot be said to have influenced his purchase, and he cannot state a claim that derives from this theory of misrepresentation." *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (citation omitted).

---

[2] *See* USDA, FoodData Central, https://bit.ly/3torNyN (last visited June 21, 2021).

[3] *See* USDA, FoodData Central, https://bit.ly/3xcPk6M (last visited June 21, 2021).

[4] *See* USDA, FoodData Central, https://bit.ly/3xi3lQR (last visited June 21, 2021).

Here, in contrast to the "High Protein Lentils" language on the front of the package, the "Protein-Packed" claim appears only in small font on the back of the package. *See* Compl. ¶ 17. And Plaintiff does not allege that he saw or relied on the "Protein-Packed" representation in deciding to purchase Enjoy Life Lentil Chips; to the contrary, he expressly alleges that he purchased the product in reliance on "the high protein representations *printed on the front of the Product*." *Id.* ¶ 8 (emphasis added). Absent any plausible allegation that he even *saw* the "Protein-Packed" language (let alone that it influenced his decision to purchase Enjoy Life Lentil Chips), Plaintiff cannot plausibly allege that this statement misled him.

Second, even if Plaintiff *had* purchased the product in reliance on the "Protein-Packed" claim, that statement is non-actionable puffery on which no reasonable consumer would rely. While a "statement that is quantifiable" or that "makes a claim as to the 'specific or absolute characteristics' of a product" may amount to an actionable misrepresentation, "a general, subjective claim about a product is non-actionable puffery." *Demetriades v. Yelp!, Inc.,* 228 Cal. App. 4th 294, 311 (2014) (quoting *Newcal Indus., Inc. v. Ikon Office Solutions,* 513 F.3d 1038, 1053 (9th Cir. 2008)). In other words, a statement is non-actionable puffery if it cannot be measured or verified by reference to any objective standard. *Id.; see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 246 (9th Cir. 1990) (holding that "general assertions of superiority" are not actionable).

In contrast to a claim that a product has "100 calories" or "10 grams of protein," MDLZ's description of Enjoy Life Lentil Chips as "Protein-Packed" is not a "specific and measurable claim" that is "capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1998). There is no objective standard by which this Court can assess whether a product is "packed" with protein (or any other nutrient), which renders the "Protein-Packed" claim non-actionable puffery. *See, e.g.*, *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855 (N.D. Cal. 2012) (holding "packed with power" was non-actionable puffery because it "say[s] nothing about the specific characteristics or components of the computer").

Plaintiff attempts to plead around this conclusion by alleging that the statement "protein-packed" implies that Enjoy Life Lentil Chips "are 'high' in protein or constitute an 'excellent source' of protein." Compl. ¶ 26. But courts in California have agreed that 21 C.F.R. § 101.54, the regulation on which Plaintiff relies, applies only to claims that use "*the words* 'good source,' 'contains,' . . . 'provides,'" or any of the

other words governed by this regulation—such as "high" or "excellent source." *Coe v. Gen. Mills, Inc.*, No. 15-5112, 2016 WL 4208287, at *4 (N.D. Cal. Aug. 10, 2016). And in any event, because the phrase "protein-packed" is not a specific or quantifiable claim, it is utterly implausible that a reasonable consumer would interpret this language to mean that a product contains at least 20% of the DRV of protein. The phrase "Protein-Packed" is puffery, and it cannot support a plausible claim of deception.

Third, if a consumer *did* look at the back of the package and see the "Protein-Packed" claim, he or she would also see the Nutrition Facts panel, which clarifies that the product contains 3 grams of protein per serving. *See* Compl. ¶ 17 (image of back label). Accordingly, no reasonable consumer would interpret the statement "Protein-Packed" to mean that a serving of Enjoy Life Lentil Chips was "high" in protein or an "excellent source" of protein—at least not as the FDA defines those terms. Rather, "any potential ambiguity could be resolved" by reviewing the Nutrition Facts panel, which confirms that each serving contains only 3 grams of protein. *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015); *see also Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1152–53 (S.D. Cal. 2021) (dismissing consumer fraud claim and holding that "a reasonable person would not find Defendant's use of 'protein-packed' to be misleading" where this claim was "accompanied by the number of grams of protein").

Plaintiff will likely rely on the Ninth Circuit's decision in *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) to argue that MDLZ cannot use the Nutrition Facts panel to correct a misstatement elsewhere on its packaging. But *Williams* stands only for the narrow and uncontroversial proposition that a reasonable consumer should not "be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* at 939. In contrast, when the "qualifiers" appear on the same side of the packaging as the challenged labeling claim, the "front-back dichotomy" at issue in *Williams* does not apply. *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167-69 (2018); *see also, e.g.*, *Brown v. Starbucks Corp.*, No. 18-2286, 2019 WL 996399, at *4 (S.D. Cal. Mar. 1, 2019) (granting motion to dismiss and noting that, in contrast to *Williams*, "the packaging does not present a 'front-back' bait-and-switch problem"). Here too, Plaintiff would not need to look at the other side of the label to dispel any alleged ambiguity. To the contrary, if he looked at the back of the label and saw the "Protein-Packed" language, he would also see the Nutrition Facts panel—which clarifies

9

that a serving of Enjoy Life Lentil Chips contains 3 grams of protein.  That clarification dispels the untenable inference Plaintiff draws from the "Protein-Packed" claim and defeats his claim of deception.

### C.    The omission of the "corrected amount of protein" is also not actionable.

In addition to alleging that the statements "High Protein Lentils" and "Protein-Packed" are affirmatively misleading, Plaintiff alleges that the omission of the "Percent Daily Value" of protein in the Nutrition Facts panel renders Enjoy Life Lentil Chips misbranded.  *See* Compl. ¶¶ 34–36.  But even assuming for argument's sake that these statements are "protein claims" that require the disclosure of the "Percent Daily Value" under 21 C.F.R. § 101.9(c)(7)(i), this theory fails because Plaintiff does not allege that he saw or relied on the Nutrition Facts panel when he purchased the product.  *See, e.g.*, *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013) ("Plaintiff has not pled that she ever looked at the nutrition panel.  As such, it is implausible that she was deceived by its lack of disclosures.").

Plaintiff's allegation that the omission of the "Percent Daily Value" statement violates an FDA regulation does not change this result.  If a plaintiff cannot "truthfully allege[] that she would not have bought the product but for the omission of a statement about its [protein] content," that plaintiff cannot "pursue a claim based on the omission of that statement."  *Shaeffer*, 44 Cal. App. 5th at 1144 (affirming dismissal of claim premised on purported omission of FDA-mandated calorie content disclosure) (citations, internal quotation marks, and alterations omitted).  Here too, Plaintiff does not allege that the omission of the Percent Daily Value of protein from the Nutrition Facts panel affected his decision to buy the product which he allegedly purchased in reliance on "the high protein representations printed on the *front* of the Product."  Compl. ¶ 8 (emphasis added).  The absence of any such allegation is fatal to Plaintiff's claim.

Indeed, multiple judges in this District have applied this precise reasoning in dismissing similar claims premised on the omission of the "corrected amount of protein" from the Nutrition Facts panel.  For example, in *Brown v. Nature's Path Foods, Inc.*, the plaintiffs alleged that the defendant's products "fail to provide the required 'percent daily value' of protein content in the nutrition facts panel, as required by FDA regulations."  No. 21-5132, 2022 WL 717816, at *4 (N.D. Cal. Mar. 10, 2022).  Judge Gilliam dismissed this claim and "agree[d] with Nature's Path that Plaintiffs have a reliance problem."  *Id.*  In so holding, Judge Gilliam noted that "each of the Plaintiffs bought the Products 'after reading and relying on the truthfulness of Defendant's product label that promised the Products contained a specified amount of

protein per serving *on the front of the product package*.'" *Id.* (emphasis added). "What is missing," Judge Gilliam explained, "are facts allowing the Court to reasonably infer that Plaintiffs made their purchasing decisions based on anything other than the Products' front labels." *Id.*

Similarly, in *Brown v. Van's International Foods, Inc.*, the plaintiff alleged that the defendant's products were mislabeled because they "fail to include the 'percent daily value' figure that FDA regulations require in the Nutrition Facts panel on the back of the package." No. 22-1, 2022 WL 1471454, at *3 (N.D. Cal. May 10, 2022). Judge Orrick dismissed this claim and concluded that the plaintiff "ha[d] a reliance problem." *Id.* at *10. Absent any "facts that would show that she looked at the Nutrition Facts label during the process of purchasing the Products," Judge Orrick found that the plaintiff had not "shown that the omission of the digestibility-adjusted sum contributed to her decision to purchase the Products." *Id.* "Without making some sort of showing on this ground," Judge Orrick could not "reasonably infer that her purchasing decision was influenced by the missing information on the Nutrition Facts panel." *Id.*

Here too, Plaintiff has not plausibly alleged that the omission of the "corrected amount of protein" from the Nutrition Facts panel had any effect on his decision to purchase Enjoy Life Lentil Chips. It is entirely irrelevant whether this omission violated the FDA regulations or deprived Plaintiff of information that would potentially contextualize the product's other representations. If Plaintiff did not even *look* at the back label prior to purchasing the product, the contents of the Nutrition Facts panel could not have affected his purchasing decision in any way. Like the plaintiffs in *Nature's Path* and *Van's International Foods*, Plaintiff's claim suffers from a fatal "reliance problem" that requires its dismissal. *Nature's Path*, 2022 WL 717816, at *4; *Van's International Foods*, 2022 WL 1471454, at *10.

**II.     Plaintiff's Tag-Along Claims Fail Absent a Plausible Allegation of Consumer Deception.**

In addition to his claims of consumer deception, Plaintiff asserts claims under the UCL's "unlawful" and "unfair" prongs, as well as common-law claims for breach of express warranty and unjust enrichment. *See* Compl. ¶¶ 65–80, 101–115. These claims fare no better.

"Unlawful" Prong. California law makes clear that Plaintiff cannot state a claim under the UCL's "unlawful" prong by simply alleging that the defendant's labeling violates an FDA regulation; rather, he must *also* allege that the regulatory violation caused his alleged economic injuries. *See Shaeffer*, 44 Cal. App. 5th at 1143–44 (holding that the plaintiff's claim based on the "alleged unlawfulness of the label"

11

failed when the plaintiff did not allege that the purported regulatory violation "had anything to do" with her decision to purchase the product).  Plaintiff cannot do so.  To the extent his claim is premised on the use of the phrase "high protein," that claim fails because Plaintiff has not plausibly alleged that the labeling represents that Enjoy Life Lentil Chips are "high" in protein or that it violates 21 C.F.R. § 101.54(b).  *See infra* § I.A.  And to the extent his claim is premised on the back-label "Protein-Packed" representation or the omission of the Percent Daily Value of protein, those claims fail because Plaintiff has not plausibly alleged that he reviewed the back of the package or the Nutrition Facts panel before purchasing the product—as would be required to establish that any purported regulatory violation caused his alleged injuries.  *See infra* §§ I.B–I.C.  As a result, Plaintiff has not stated a claim under the "unlawful" prong.

"Unfair" Prong.  "[W]here the plaintiffs' unfair prong claims overlap entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive" absent a viable claim of deception.  *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019) (citation and internal quotation marks omitted).  Here, Plaintiff's claim under the UCL's "unfair" prong is premised on his allegation that the labeling of Enjoy Life Lentil Chips includes "materially false representations and omissions."  Compl. ¶ 69.  Because that theory of unfairness "overlaps entirely" with Plaintiff's claims of deception, his inability to allege that MDLZ's labeling is likely to deceive a reasonable consumer also defeats his claim under the "unfair" prong.  *Punian v. Gillette Co.*, No. 14-5028, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016).

Common-Law Claims.  Plaintiff's tag-along claim for breach of express warranty also fails absent "some sort of actionable representation."  *Weiss*, 838 F. App'x at 303 (affirming dismissal of breach of warranty claims premised "on the exact same representations as her consumer protection claims"); *see also Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-6664, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) (dismissing breach-of-warranty claim premised on alleged "deception that, as a matter of law, does not exist").  And the same is true for Plaintiff's unjust enrichment claim.  *See, e.g.*, *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008) (noting that an "unjust enrichment claim also fails" when a defendant's "non-deceptive advertising does not entitle [the plaintiff] to restitutionary relief").  Absent any plausible allegation that MDLZ's labeling is likely to mislead a reasonable consumer, this Court should dismiss Plaintiff's common-law claims.

III.     **Plaintiff Cannot Assert Statutory Claims on Behalf of a Nationwide Class.**

Plaintiff attempts to assert his claims under the UCL, FAL, and CLRA on behalf of a putative nationwide class.  *See* Compl. ¶ 56.  But even if these statutory claims were sufficiently plausible to withstand dismissal (which they are not), these statutes do not apply to class members outside California.

For over a century, California courts have recognized a "presumption" that the Legislature "did not intend to give its statutes any extraterritorial effect."  *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916).  Because "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially," the "presumption against extraterritoriality applies to the UCL in full force."[5]  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *accord Grupo Bimbo, S.A. B. De C.V. v. Snak-King Corp.*, No. 13-2147, 2014 WL 12610141, at *3 (C.D. Cal. Oct. 2, 2014) ("California law is unequivocal: the UCL has no extraterritorial application and only applies where the alleged wrongful acts occurred within the state of California.").

*Wilson v. Frito-Lay North America, Inc.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013), is illustrative.  There, Judge Conti rejected the plaintiffs' effort to "expand their case to include a nationwide putative class of consumers" and agreed that "such claims must fail[] because Plaintiffs sue[d] only based on violations of California law, and the Supreme Court of California ha[d] clarified that . . . the UCL, FAL, and CLRA presumptively do not apply to occurrences outside of California."  *Id.* at 1147.  In so holding, Judge Conti agreed that "Plaintiffs ha[d] failed to give a plausible account of how or why a non-California plaintiff could sue under California tort law for purchases made outside the state from a Texan company that, at most, advertises and sells its products in California."  *Id.* at 1148.  Because "there [was] no plausible way for a non-California citizen who purchased Defendant's Products outside California to bring these claims," Judge Conti dismissed any "California law claims based on activity occurring in other states."  *Id.*

That reasoning applies with equal force here.  While Plaintiff may be able to invoke California's consumer protection statutes to sue on his own behalf or on behalf of other California consumers, he cannot

---

[5] California courts have reached the same conclusion with respect to the FAL and the CLRA.  *See, e.g.*, *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918 (C.D. Cal. 2011) ("Courts have recognized that the FAL is limited to application in California."); *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015) (holding that the FAL does not apply extraterritorially); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1086–87 (N.D. Cal. 2014) ("[T]he ordinary presumption against extraterritorial application of California law applies to UCL, CLRA, and FAL claims . . . .").

sue MDLZ—which is not a California citizen—on behalf of consumers who reside outside of California, did not purchase Enjoy Life Lentil Chips in California, and whose alleged injuries have no nexus to California.  This Court should dismiss Plaintiff's statutory claims on behalf of a putative nationwide class.

## IV.  Plaintiff Cannot Seek Equitable Relief Because He Has an Adequate Legal Remedy.

Finally, even if this Court does not dismiss Plaintiff's lawsuit outright, it should nonetheless dismiss his claims to the extent they seek restitution, an injunction, and other equitable relief.[6]  As the Ninth Circuit has made clear, a plaintiff cannot seek equitable relief under California's consumer protection statutes without establishing that he or she lacks an adequate remedy at law.  *See Sonner*, 971 F.3d at 844.  Several of Plaintiff's claims permit him to recover money damages, and those damages would adequately compensate him for his alleged injury—*i.e.*, the supposed "price premium" he allegedly paid due to MDLZ's alleged mislabeling.  *Sonner* accordingly bars Plaintiff from seeking equitable relief.

In *Sonner*, the plaintiff initially asserted claims for both restitution and damages, but later abandoned her damages claims in favor of her claims for equitable restitution.  971 F.3d at 838.  The district court then dismissed the plaintiff's remaining claims for restitution, holding that she had "failed to establish that she lacked an adequate legal remedy for the same past harm for which she sought equitable restitution." *Id.*  The Ninth Circuit affirmed.  In so holding, the Ninth Circuit agreed that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844.  And because the plaintiff had not alleged—let alone demonstrated—that she lacked an adequate legal remedy, the court held that she could not seek restitution. *Id.*

*Sonner* squarely precludes Plaintiff's claims for equitable relief.  Like the plaintiff in *Sonner*, Plaintiff alleges that he "[p]aid a premium price for Products that were not what Defendant represented." Compl. ¶ 45; *see also id* ¶ 49 (alleging that Plaintiff "lost money as a result of Defendant's wrongful conduct").  And like the plaintiff in *Sonner*, Plaintiff asserts claims—including his claim under the CLRA and his breach-of-warranty claim—that permit recovery of money damages.  Because Plaintiff's claims

---

[6] At a minimum, this would require the dismissal of Plaintiff's claim for restitution under the CLRA and his claims under the UCL and FAL, which only authorize equitable relief and do not permit recovery of damages.  *See generally In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) ("The remedies available in a UCL or FAL action are limited to injunctive relief and restitution.").

are premised on the money he allegedly "lost" as a result of MDLZ's conduct, and because he seeks damages as a remedy for that alleged injury, he has an adequate remedy at law.

Courts throughout California have applied this precise reasoning in dismissing claims for restitution under California's consumer protection statutes. *See, e.g.*, *Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-769, 2020 WL 5492990, at *3–4 (C.D. Cal. Sept. 9, 2020) (applying *Sonner* to dismiss claims for equitable relief with prejudice where the plaintiffs alleged that they "would have been able to avoid spending money" but for the defendant's alleged misrepresentations); *In re MacBook Keyboard Litig.*, No. 18-2813, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) (applying *Sonner* to dismiss claims for equitable relief with prejudice where the plaintiffs alleged that they "overpaid for their allegedly defective laptops and incurred various expenses in their attempts to resolve the deficiencies"). Courts have applied the same reasoning in dismissing claims for injunctive relief, as *Sonner*'s "broad analysis of the distinction between law and equity" does not "create an exception for injunctions as opposed to other forms of equitable relief." *Adams v. Cole Haan, LLC*, No. 20-913, 2020 WL 5648605, at *2–3 (C.D. Cal. Sept. 3, 2020); *see also MacBook Keyboard*, 2020 WL 6047253, at *3 ("[U]nder *Sonner*, Plaintiffs are required to allege that they lack an adequate remedy at law in order to seek injunctive relief.").

In short, Plaintiff claims that he lost money due to MDLZ's conduct, and he seeks money damages sufficient to make him whole for that monetary injury. In light of those allegations, Plaintiff cannot plausibly allege that he lacks an adequate legal remedy, and *Sonner* precludes him from seeking restitution, an injunction, or other equitable relief.

## **CONCLUSION**

MDLZ respectfully requests that the Court dismiss Plaintiff's lawsuit with prejudice.


DATED:  June 21, 2022                    JENNER & BLOCK LLP

                                         By:  _____/s/   Dean N. Panos_____
                                                         Dean N. Panos

                                         Attorneys for Defendant
                                         Mondelēz International, Inc.